**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| Jiangsu Nova Intelligent Logistics Equipment Co., Ltd., Anhui Nova Intelligent Equipment Co., Ltd., Star Nova US LLC<br><br>Plaintiffs,<br>v.<br><br>Berrien Star Engineering LLC, Corehire Solutions LLC, Berrien Star LLC (f/k/a Lesson One Trade LLC), Precise Installer LLC, Northstar Supply LLC, Bin Ren, Xiujuan Li, Shao Tsu Liu a/k/a Rowland Liu, and Min Chun Lee a/k/a Esther M. Lee<br><br>Defendantes. | Case No. 3:26-cv-01466 |

**COMPLAINT**

Plaintiffs Jiangsu Nova Intelligent Logistics Equipment Co., Ltd. (“**Jiangsu Nova**”), Anhui Nova Intelligent Equipment Co., Ltd. (“**Anhui Nova**”), and Star Nova US LLC (“**Star Nova**”) (collectively, “**Plaintiffs**”), by and through their undersigned counsel, bring this action against Defendants Berrien Star Engineering LLC (“**Berrien Star Engineering**”), Corehire Solutions LLC (“**Corehire**”), Berrien Star LLC, formerly known as Lesson One Trade LLC (“**Berrien Star**”), Precise Installer LLC (“**Precise Installer**”), Northstar Supply LLC (“**Northstar**”), Bin Ren, Xiujuan Li, Shao Tsu Liu, also known as Rowland Liu, and Min Chun Lee, also known as Esther M. Lee (collectively, “**Defendants**”), and alleges as follows:

**<u>THE PARTIES</u>**

1. Plaintiff Jiangsu Nova Intelligent Logistics Equipment Co., Ltd. (江苏六维智能物流装备股份有限公司), formerly known as Jiangsu Nova Logistics Equipment Industrial Co., Ltd.

(江苏六维物流设备实业有限公司), was established on September 17, 2002, under the laws of the People's Republic of China. On November 11, 2016, Plaintiff underwent a joint-stock restructuring and changed its name to its current name. The Operating Agreement and certain other documents referenced herein identify Plaintiff by its prior name.

2. Plaintiff Anhui Nova Intelligent Equipment Co., Ltd. (安徽六维智能装备有限公司) is a wholly owned subsidiary of Jiangsu Nova and was established under the laws of the People's Republic of China.

3. Plaintiff Star Nova is an Indiana limited liability company with its principal office in South Bend, Indiana.

4. Defendant Berrien Star Engineering is a Michigan limited liability company formed on September 1, 2020 by Defendant Xiujuan Li, with its principal office in Berrien Center, Michigan. Upon information and belief, Xiujuan Li is the President and registered agent of Berrien Star Engineering. On or about July 6, 2026, Berrien Star Engineering qualified to do business in Indiana.

5. Defendant Corehire Solutions LLC is an Indiana limited liability company formed on January 21, 2025 by Defendant Xiujuan Li, with its principal office in South Bend, Indiana. Upon information and belief, Xiujuan Li is the President of Corehire.

6. Defendant Berrien Star, formerly known as Lesson One Trade LLC, is an Indiana limited liability company formed on September 30, 2025 by Defendant Xiujuan Li, with its principal office in South Bend, Indiana. Upon information and belief, Min Chun Lee is the President and registered agent of Berrien Star.

7. Defendant Precise Installer is an Indiana limited liability company formed on October 7, 2025 by Defendant Shao Tsu Liu, with its principal office in South Bend, Indiana. Upon information and belief, Shao Tsu Liu is the President and registered agent of Precise Installer.

8. Defendant Northstar is an Indiana limited liability company formed on May 20, 2026 by Defendant Xiujuan Li, with its principal office in South Bend, Indiana. Upon information and belief, Xiujuan Li is the President of Northstar.

9. Defendant Bin Ren is believed to be a citizen of Berrien Center, Michigan. Bin Ren was appointed President and registered agent of Star Nova pursuant to the Operating Agreement. On or about June 19, 2026, Bin Ren orally resigned as President of Star Nova. Despite his resignation and a subsequent Written Resolution of the majority member formally accepting and confirming his removal, Bin Ren has refused to relinquish control of Star Nova's Amazon accounts, credentials, and operations, and continues to exercise unauthorized control over the Company's affairs.

10. Defendant Xiujuan Li is the wife of Defendant Bin Ren and is believed to be a citizen of Berrien Center, Michigan. Pursuant to the Operating Agreement, Xiujuan Li served as the Chief Financial Officer of Star Nova and was the authorized signatory for Star Nova's bank accounts. On or about May 14, 2026, Xiujuan Li informed Jiangsu Nova's Chief Financial Officer that she had withdrawn from the management of Star Nova. Despite her withdrawal, Xiujuan Li has failed to turn over Star Nova's financial records, bank account access, and corporate books, and has continued to obstruct Plaintiffs' efforts to obtain an accounting of Star Nova's financial affairs. Upon information and belief, Xiujuan Li is the President and registered agent of Defendant Berrien Star Engineering and the President of Defendant Northstar.

11. Defendant Shao Tsu Liu, also known as Rowland Liu, is believed to be a citizen of Berrien Springs, Michigan. Shao Tsu Liu served as Star Nova's Vice President of Operations. Upon information and belief, Shao Tsu Liu is also the President and registered agent of Defendant Precise Installer.

12. Defendant Min Chun Lee, also known as Esther M. Lee, is the wife of Defendant Shao Tsu Liu and is believed to be a citizen of Berrien Springs, Michigan. Upon information and belief, Min Chun Lee is the President and registered agent of Defendant Berrien Star.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331 (federal question) because this action arises under federal law, including the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., and the Lanham Act, 15 U.S.C. § 1125(a). This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims as to form part of the same case or controversy.

14. This Court has personal jurisdiction over Defendants Corehire, Berrien Star, Precise Installer, and Northstar as Indiana limited liability companies organized under and subject to the laws of the State of Indiana. This Court has personal jurisdiction over Defendant Berrien Star Engineering, a Michigan limited liability company, which consented to jurisdiction in Indiana by qualifying to do business in this State on or about July 6, 2026 and which maintains operations in South Bend, Indiana. Fed. R. Civ. P. 4(k)(1)(A); Ind. Trial Rule 4.4(A)(1).

15. This Court has personal jurisdiction over Defendants Bin Ren, Xiujuan Li, Shao Tsu Liu, and Min Chun Lee pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Indiana Trial Rule 4.4(A). Each individual Defendant formed, organized, served as an officer of, and/or directed the

operations of one or more Indiana limited liability companies, including Star Nova, Corehire, Berrien Star, Precise Installer, and Northstar; transacted business in Indiana through those entities; and committed tortious acts both within and outside Indiana that caused injury to Plaintiffs in Indiana.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because (a) Defendants Corehire, Berrien Star, Precise Installer, and Northstar are Indiana limited liability companies with principal offices in South Bend, St. Joseph County, Indiana, within this District; (b) Defendant Berrien Star Engineering is qualified to do business in Indiana and maintains operations in this District; and (c) a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this District, including the diversion of Plaintiffs' business operations, shipments, and payment streams, and the unauthorized control of Star Nova's Amazon accounts and corporate affairs.

## FACTUAL BACKGROUND

17. This action arises from Defendants' scheme to divert, directly and indirectly, Plaintiffs' U.S. business, customer relationships, shipments, payment streams, and commercial opportunities away from Plaintiffs to Defendants and to entities controlled by, affiliated with, or acting at the direction of Defendants, including but not limited to the co-Defendant entities and the Competing Ningbo Entities identified herein.

18. On or about January 13, 2015, Jiangsu Nova, Bin Ren, Xiujuan Li, and Shuqing Sun entered into the Operating Agreement with Star Nova (the "**Operating Agreement**").

19. An authentic copy of the Operating Agreement is attached to this Complaint as **Exhibit 1**.

20. According to Section 10.2 of the Operating Agreement, "the rights and obligations of the parties under it are governed by and interpreted in accordance with the laws of the State of Washington."

21. The party bringing an action to enforce the Operating Agreement is entitled to costs and attorneys' fees. (Operating Agreement, Section 10.4.)

**A. Formation and Capitalization of Star Nova**

22. Under the Operating Agreement, Jiangsu Nova agreed to contribute RMB 1,740,000 in exchange for a 58% membership interest; Bin Ren agreed to contribute RMB 660,000 in exchange for a 22% membership interest; and Shuqing Sun and Xiujuan Li each agreed to contribute RMB 300,000 in exchange for a 10% membership interest.

23. Pursuant to the Operating Agreement, Zhenglin Xu, Chairman of Jiangsu Nova ("**Jiangsu Nova's Chairman**"), was appointed Chairman of Star Nova, and Bin Ren was appointed President of Star Nova.

24. Upon information and belief, Xiujuan Li served as the Chief Financial Officer of Star Nova and was responsible for maintaining Star Nova's financial records and managing its banking relationships.

25. Section 7.5 of the Operating Agreement designates Xiujuan Li as the authorized signatory for Star Nova's bank accounts.

26. On or about January 13, 2015, Bin Ren filed the Articles of Organization of Star Nova with the Indiana Secretary of State and designated himself as Star Nova's President and registered agent.

27. On November 10, 2015, Jiangsu Nova wired $300,000 to Star Nova's account at Old National Bank. The wire transfer identified the payment as a "capital contribution."

28. As of December 31, 2015, Star Nova maintained only one bank account, which was held at Old National Bank.

29. In or about 2016, Defendants Bin Ren and Xiujuan Li caused Star Nova to open a second bank account — a checking account at JPMorgan Chase Bank, N.A. — without disclosing the account to Jiangsu Nova or obtaining Jiangsu Nova's authorization. Star Nova also maintained its existing account at Old National Bank.

30. Upon information and belief, in connection with opening the Chase account, Bin Ren and Xiujuan Li falsely represented to JPMorgan Chase Bank, N.A. that they were the sole owners of Star Nova, with no ownership interest attributed to Jiangsu Nova. This representation was false — under the Operating Agreement, Jiangsu Nova held a 58% membership interest in Star Nova and had contributed $300,000 in capital.

31. By misrepresenting the ownership of Star Nova to the bank, Bin Ren and Xiujuan Li ensured that they alone would have authority over the account, excluding Jiangsu Nova from any access to or control over the funds deposited therein.

32. Upon information and belief, Defendants Bin Ren and Xiujuan Li have not fully funded their respective capital contributions of RMB 660,000 and RMB 300,000 as required by the Operating Agreement.

33. Before 2019, Star Nova's bank account statements were mailed to addresses in California.

34. By December 31, 2019, Star Nova's bank statement mailing addresses had been changed from California to Berrien Springs, Michigan — the personal residence of Defendants Bin Ren and Xiujuan Li — without Plaintiffs' knowledge, consent, or authorization.

35. By redirecting Star Nova's bank statements to their own residence, Bin Ren and Xiujuan Li ensured that Plaintiffs would have no independent access to Star Nova's banking records and would be unable to monitor the disposition of funds flowing through Star Nova's accounts other than through information provided by Bin Ren and Xiujuan Li themselves.

**B. Plaintiffs' Amazon Business and Development of the AWS MARS MODULE**

36. Jiangsu Nova is a leading shelving and logistics equipment manufacturer based in Jiangsu Province, China. Following a multi-year qualification process, during which Jiangsu Nova invested substantial resources in research, development, prototyping, and testing, Jiangsu Nova was approved by Amazon as a supplier-manufacturer of server rack systems in or about 2018. Upon information and belief, Jiangsu Nova is one of a small number of approved supplier-manufacturers of Amazon's server rack systems worldwide, and the only approved manufacturer in China.

37. It then began manufacturing custom-designed server rack components — including beams, columns, and cantilever arms — for Amazon Web Services ("**AWS**") cloud computing data centers. Jiangsu Nova supplied these AWS products to Star Nova, which resold them to Amazon, and the components were packaged and shipped to AWS facilities for on-site assembly by Amazon's installation teams.

38. Although Bin Ren served as the point of contact between Jiangsu Nova and Amazon and Amazon's designated third-party certification auditor, Defendants played no role in the development, design, engineering, or manufacture of these products. Jiangsu Nova's own personnel, led by its head of quality assurance, prepared the materials and coordinated the facility audits required for Amazon's approval.

39. In 2023, at Amazon's request, Jiangsu Nova began developing a new product known as the "**AWS MARS MODULE**." The AWS MARS MODULE is a fully integrated, pre-assembled modular unit designed to replace the prior system of on-site component assembly at AWS data centers. Each AWS MARS MODULE integrates multiple proprietary components — including structural columns, beams, cantilever arms, polycarbonate panels, grid cable trays, and fireproof boards — into a single factory-assembled module. Upon delivery to an AWS data center, the AWS MARS MODULE requires only minimal on-site assembly, substantially reducing Amazon's installation costs and deployment time.

40. In or about June 2023, Jiangsu Nova successfully completed a prototype of the AWS MARS MODULE, after which Amazon approved the product and directed Jiangsu Nova to commence mass production.

41. On or about December 28, 2023, Jiangsu Nova constructed a manufacturing facility in Anhui Province for the purpose of manufacturing the AWS MARS MODULE through its wholly owned subsidiary, Anhui Nova.

42. Following the completion of equipment commissioning in or about November 2024, Anhui Nova commenced commercial production and began shipping AWS MARS MODULE products to Star Nova.

43. From November 2024 through September 25, 2025, Anhui Nova exported AWS MARS MODULE products to Star Nova. During that period, Star Nova was identified as the consignee on the applicable export customs declarations.

44. Star Nova resold the AWS MARS MODULE products and other AWS products manufactured by Jiangsu Nova and Anhui Nova to Amazon.

45. As President of Star Nova, Bin Ren served as the sole point of contact with Amazon and maintained exclusive control over all Amazon-facing accounts, credentials, order systems, and communication channels used in connection with Star Nova's business.

46. Jiangsu Nova and Anhui Nova had no direct contractual relationship with Amazon and no independent access to Star Nova's Amazon accounts or communications.

47. This arrangement gave Bin Ren and the other individual Defendants exclusive, unilateral control over Plaintiffs' most important customer relationship and the ability to redirect orders, payments, shipments, and business opportunities without Plaintiffs' knowledge. Defendants exploited this structural vulnerability as described more fully herein.

48. As described more fully below, Defendants exploited this control to, among other things, divert Plaintiffs' customer orders, shipments, and payment streams to entities they formed or controlled; cause the consignee on Plaintiffs' export declarations to be changed from Star Nova to those entities; redirect Amazon payments to bank accounts maintained by Berrien Star Engineering; and, directly or indirectly, create, organize, finance, and direct the Competing Ningbo Entities as competing manufacturers of the AWS MARS MODULE using Plaintiffs' trade secrets, proprietary manufacturing processes, and product specifications — and then market and sell those competing products to Amazon under Plaintiffs' supplier-manufacturer certification as if manufactured by Plaintiffs.

49. The design, engineering specifications, manufacturing processes, tooling configurations, quality control protocols, and supplier pricing for the AWS MARS MODULE constitute confidential, proprietary, and trade secret information of Jiangsu Nova and Anhui Nova.

50. Jiangsu Nova invested substantial resources in the research, development, and prototyping of the AWS MARS MODULE over an extended period before receiving Amazon's product certification.

51. Upon information and belief, to date, Amazon has approved only a small number of suppliers worldwide — no more than five — to manufacture AWS MARS MODULE products, and Jiangsu Nova is the only approved supplier-manufacturer in China. This limited certification underscores the specialized nature and competitive value of Jiangsu Nova's proprietary manufacturing processes and product knowledge.

52. As described more fully below, Defendants, directly or indirectly, created, organized, financed, and directed competing manufacturing operations in Ningbo, China through Ningbo Vichnet Technology Co., Ltd. (宁波纬诚科技有限责任公司) ("**Ningbo Vichnet**"), Ningbo Beiling Network Equipment Co., Ltd. (宁波蓓灵网络科技有限公司) ("**Ningbo Beiling**"), Ningbo Beizhi Trading Co., Ltd. (宁波蓓智贸易有限公司) ("**Ningbo Beizhi**"), and Ningbo Beiling Cloud Internet Equipment Co., Ltd. (宁波蓓灵云端网络设备有限公司) ("**Ningbo Beiling Cloud**") (collectively, the "**Competing Ningbo Entities**"), each organized under the laws of the People's Republic of China, with principal place of business in Ningbo, China.

53. Defendants supplied the Competing Ningbo Entities with Plaintiffs' trade secrets, proprietary manufacturing processes, product specifications, and engineering data; caused the Competing Ningbo Entities to manufacture AWS MARS MODULE products in competition with Plaintiffs; imported those products into the United States through Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, and other entities controlled by Defendants; and marketed and sold those products to Amazon under Plaintiffs' supplier-manufacturer

certification as if manufactured by Jiangsu Nova and Anhui Nova — all without Plaintiffs' knowledge, consent, or authorization.

54. The AWS MARS MODULE is a highly customized product designed and manufactured exclusively for Amazon's AWS cloud computing infrastructure. Upon information and belief, the AWS MARS MODULE has no meaningful commercial use outside of Amazon's AWS operations. Because Amazon is effectively the sole end user of the AWS MARS MODULE, any diversion of the AWS MARS MODULE business from Plaintiffs to Defendants, the Competing Ningbo Entities, or other entities directly or indirectly controlled by or affiliated with Defendants constitutes a complete usurpation of Plaintiffs' market for the product.

**C. Unauthorized Formation of Berrien Star Engineering and Diversion of Payments**

55. Xiujuan Li formed Berrien Star Engineering in Michigan on or about September 1, 2020.

56. From at least November 2020 through June 2026, Berrien Star Engineering's registered office and mailing address were both 9360 Fox Run, Berrien Center, Michigan 49102. Upon information and belief, that address is the personal residence of Defendants Bin Ren and Xiujuan Li.

57. In 2024, both Star Nova and Berrien Star Engineering used the same 9360 Fox Run address as the mailing address for their respective JPMorgan Chase Bank accounts, further reflecting Defendants' control over and commingling of the financial affairs of both entities.

58. Berrien Star Engineering's annual reports for 2021, 2023, and 2025 identify Xiujuan Li as the individual who signed and submitted such reports on behalf of the company in her capacity as a manager and/or member.

59. On or about July 30, 2023, Bin Ren sent an email to Amazon Japan representing that Berrien Star Engineering was a subsidiary of Star Nova and requesting that Amazon remit payments otherwise payable to Star Nova to a bank account maintained by Berrien Star Engineering.

60. On or about May 28, 2026, Bin Ren sent an email to Amazon US requesting that payments otherwise payable to Star Nova be remitted to a bank account maintained by Berrien Star Engineering. When Amazon US requested documentation supporting the change in payment instructions, Bin Ren forwarded a certification previously provided to Amazon Japan in July 2023 representing that Berrien Star Engineering was a subsidiary of Star Nova.

61. Plaintiffs neither authorized nor consented to the formation of Berrien Star Engineering by Star Nova, Bin Ren, Xiujuan Li, or any other person acting on Star Nova's behalf.

62. Upon information and belief, Defendants formed or controlled other entities — including but not limited to co-Defendants Corehire, Berrien Star, Precise Installer, and Northstar — directly or indirectly, for the purpose of furthering the diversion of Plaintiffs' payments, shipments, and business opportunities away from Star Nova and Plaintiffs to entities owned or controlled by Defendants, as more fully described herein.

63. Plaintiffs neither authorized nor consented to the formation of co-Defendants Corehire, Berrien Star, Precise Installer, Northstar, or any other entities owned or controlled by Defendants by Star Nova, Bin Ren, Xiujuan Li, or any other person acting on Star Nova's behalf.

**D. Financial Concealment and Misappropriation of Funds**

64. On or about March 17, 2025, Jiangsu Nova's Chief Financial Officer, Yuxia Zhu ("**Jiangsu Nova's CFO**"), requested that Bin Ren and Xiujuan Li provide Star Nova's financial statements, general ledger, and bank statements for purposes of Jiangsu Nova's 2024 audit. In

response, Xiujuan Li transmitted the requested financial records to Jiangsu Nova's CFO by email. The records included a statement for a bank account held by Berrien Star Engineering. The Berrien Star Engineering statement was included among the Star Nova materials without any identification or explanation, and Jiangsu Nova did not discover it until in or about July 2026.

65. Beginning on or about January 27, 2026, and continuing through May 28, 2026, Jiangsu Nova's CFO and Jiangsu Nova repeatedly requested that Bin Ren and Xiujuan Li provide Star Nova's 2025 general ledger, bank statements, and accounts receivable and accounts payable aging reports.

66. On or about May 14, 2026, Xiujuan Li informed Jiangsu Nova's CFO that she had withdrawn from the management of Star Nova.

67. Despite continued requests through May 28, 2026, Bin Ren and Xiujuan Li failed and refused to provide the requested records.

68. Plaintiffs first discovered the unauthorized diversion of Star Nova's payment stream to Berrien Star Engineering on or about July 1, 2026, when Jiangsu Nova's IT manager provided access to backup email records confirming the foregoing unauthorized payment instructions.

69. Prior to Plaintiffs' discovery described in the preceding paragraph, on or about June 12, 2026, Jiangsu Nova's Chairman traveled to Japan to meet with Bin Ren to obtain Star Nova's financial records. Although Bin Ren agreed during the meeting to provide the records, he thereafter failed and refused to do so.

70. On or about July 24, 2026, Bin Ren proposed that Jiangsu Nova execute a Pre-Settlement Negotiation Agreement as a precondition to resolving the parties' dispute and disclosing Star Nova's financial records. The proposed agreement would have required all

financial information exchanged between the parties to be treated as confidential settlement communications, subject to evidentiary protections, and rendered inadmissible in any litigation.

71. By conditioning disclosure of Star Nova's financial records on such terms, Defendants sought to ensure that any evidence of misappropriation or diversion revealed through the financial records could not be used against them in subsequent proceedings.

72. On or about July 29, 2026, an intermediary acting on behalf of Bin Ren communicated to Boyang Xu, General Manager of Jiangsu Nova ("**Jiangsu Nova's GM**"), that Bin Ren would not provide Star Nova's financial data because possession of such data would be disadvantageous to him, and that the agreement proposed by Bin Ren was intended solely to protect Bin Ren from legal liability and did not protect Jiangsu Nova's interests.

73. On or about August 12, 2026, in response to Jiangsu Nova's CFO's request that Xiujuan Li provide Star Nova's semi-annual financial statements, Xiujuan Li stated that the financial statements would be provided only if Jiangsu Nova's Chairman signed the Pre-Settlement Negotiation Agreement proposed by Bin Ren.

74. A comparative analysis of Star Nova's 2024 and 2025 financial statements revealed significant anomalies. Although Star Nova's total revenue in 2025 increased substantially over its 2024 revenue, its net operating income declined significantly, and its gross profit margin decreased materially.

75. In the absence of any material change in Star Nova's operating environment, upon information and belief, these anomalies resulted from the systematic diversion and transfer of Star Nova's profits to entities directly or indirectly controlled by or affiliated with Defendants.

76. Based on the shipment dates reflected in customs and export records and the applicable payment terms between Star Nova and Amazon, Plaintiffs estimate that, as of

September 29, 2026, Star Nova has collected the substantial majority of the payments owed by Amazon for goods shipped by Jiangsu Nova and Anhui Nova.

77. Despite having collected the substantial majority of such payments, Star Nova has represented that it currently has no funds in its accounts.

78. Upon information and belief, Star Nova's funds have been misappropriated and diverted to Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar, and/or other entities controlled by or affiliated with Defendants.

**E. Unauthorized Changes to Consignees and Diversion of Shipments**

79. Defendants, directly and indirectly, caused the consignee on customs declarations for AWS MARS MODULE products exported by Plaintiffs to be changed from Star Nova to entities formed or controlled by Defendants, including but not limited to Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar, for the purpose of diverting Plaintiffs' shipments, goods, and business opportunities. These changes were made without Plaintiffs' knowledge, authorization, or consent.

80. Prior to September 25, 2025, for all AWS MARS MODULE products exported by Anhui Nova, Star Nova was identified as the consignee on all applicable customs and export documentation.

81. Beginning on or about October 10, 2025, and continuing through January 6, 2026, Bin Ren directed Liqing Rui, a salesperson in Jiangsu Nova's International Department responsible for U.S. business operations, to secretly change the consignee listed on customs declarations for AWS MARS MODULE products exported by Anhui Nova from Star Nova to *Berrien Star Engineering*. The changes were made without Plaintiffs' knowledge, authorization, or consent.

82. Beginning on or about January 7, 2026, and continuing through February 13, 2026, Bin Ren directed Liqing Rui to secretly change the consignee listed on customs declarations for AWS MARS MODULE products exported by Anhui Nova from Star Nova to *Berrien Star*. The changes were made without Plaintiffs' knowledge, authorization, or consent.

83. Berrien Star LLC, formerly known as Lesson One Trade LLC, was formed on September 30, 2025 by Defendant Xiujuan Li for the purpose of receiving diverted shipments and serving as an additional conduit for the diversion of Plaintiffs' business. Like Berrien Star Engineering, Berrien Star was controlled by Defendants and used to intercept goods and payments that rightfully belonged to Plaintiffs.

84. Beginning on or about March 11, 2026, and continuing through May 29, 2026, Bin Ren directed Liqing Rui to change the consignee listed on customs declarations for AWS MARS MODULE products exported by Anhui Nova from Star Nova to *Precise Installer*. The changes were made without Plaintiffs' knowledge, authorization, or consent.

85. Upon information and belief, from at least December 2025 through September 2026, Defendants also caused the consignee on customs declarations for AWS MARS MODULE products exported by Jiangsu Nova to be changed to *Corehire*. Corehire was formed on January 21, 2025 by Defendant Xiujuan Li and, upon information and belief, is controlled by Xiujuan Li as its President. These changes were made without Plaintiffs' knowledge, authorization, or consent.

86. U.S. customs import records reflect that, from at least December 2025 through September 2026, Corehire imported AWS MARS MODULE products in which Jiangsu Nova was identified as the shipper. The shipments comprised dozens of full container loads delivered to locations across the United States, including South Bend, Indiana; Norfolk, Virginia; Newark,

New Jersey; Los Angeles and Long Beach, California; and Tacoma, Washington. The delivery addresses on the customs documentation included addresses associated with Amazon facilities.

87. Like Berrien Star Engineering, Berrien Star, Precise Installer, and Northstar, Corehire served as a conduit through which Defendants diverted Plaintiffs' products and business, importing goods manufactured by or for Plaintiffs and causing those goods to be delivered to Amazon without Plaintiffs' knowledge, authorization, or consent.

88. Upon information and belief, Corehire's use of the same South Bend address as Star Nova's warehouse, and the identification of Jiangsu Nova as the shipper on Corehire's customs documentation, demonstrate that Defendants directed Plaintiffs' own products to be shipped to Corehire — rather than to Star Nova — in furtherance of the same diversion scheme carried out through the other entity Defendants.

89. On or about September 14, 2026, Star Nova's VP of Operations directed Jiangsu Nova to ship products manufactured in June to the United States and designated *Northstar* as the consignee.

90. Upon investigation, Jiangsu Nova discovered that Northstar was a recently incorporated entity whose registered address was the same as the Star Nova warehouse. Northstar was formed on May 20, 2026 by Defendant Xiujuan Li for the purpose of further diverting Plaintiffs' shipments and business.

91. Upon information and belief, Min Chun Lee, as the President and registered agent of Berrien Star and the wife of Defendant Shao Tsu Liu, participated in or had knowledge of the scheme to divert Plaintiffs' shipments and business opportunities to entities controlled by Defendants, including through her roles in managing and operating Berrien Star as a conduit for

diverted goods and payments and in the formation and operation of Northstar for the purpose of furthering the diversion of Plaintiffs' shipments and business.

92. On or about August 12, 2026, at Jiangsu Nova's request, the Jiangning District Economic Crime Investigation police in China interviewed Liqing Rui regarding the unauthorized changes to the consignees identified on export customs declarations.

**F. Misappropriation of Trade Secrets and Unauthorized Product Substitution**

93. Upon information and belief, Defendants, directly or indirectly, created, organized, controlled, directed, and financed the Competing Ningbo Entities — Ningbo Vichnet, Ningbo Beiling, and Ningbo Beizhi — and developed and carried out a scheme to establish a competing manufacturing operation for the AWS MARS MODULE.

94. Upon information and belief, Defendants directed and financed the Competing Ningbo Entities' operations, supplied them with Plaintiffs' trade secrets, proprietary manufacturing processes, and product specifications, and used Plaintiffs' Amazon supplier-manufacturer certification to market and sell the Competing Ningbo Entities' products as if they were manufactured by Plaintiffs.

95. The purpose of this scheme was to replace Plaintiffs as the source of AWS MARS MODULE products sold to Amazon, while continuing to use Plaintiffs' name and certification to conceal the substitution from Amazon.

96. The Competing Ningbo Entities could not have independently developed the technology, manufacturing processes, and know-how necessary to produce the AWS MARS MODULE within the timeframe in which they commenced operations.

97. From July 21, 2025, through January 21, 2026, Ningbo Vichnet exported AWS MARS MODULE products to *Berrien Star Engineering*. Upon information and belief, those products were subsequently sold to Amazon through Star Nova.

98. From January 23, 2026, through March 18, 2026, Ningbo Vichnet exported AWS MARS MODULE products to *Berrien Star*. Upon information and belief, those products were subsequently sold to Amazon through Star Nova.

99. On or about March 28, 2026, Ningbo Beizhi began exporting AWS MARS MODULE products to Berrien Star Engineering and *Precise Installer*.

100. Upon information and belief, those products were subsequently sold to Amazon through Star Nova.

101. Upon information and belief, none of Ningbo Vichnet, Ningbo Beiling, or Ningbo Beizhi held Amazon's supplier-manufacturer certification for AWS MARS MODULE products. Nevertheless, Defendants caused the AWS MARS MODULE products manufactured by those entities to be represented, marketed, and sold to Amazon as products manufactured by Jiangsu Nova and Anhui Nova, without Plaintiffs' knowledge, consent, or authorization.

102. From August 10 through August 13, 2025, Bin Ren and Xiujuan Li directed Hai Zhao, a front-end technical engineer employed by Jiangsu Nova and responsible for U.S. products, to travel to Ningbo Vichnet. The trip was neither assigned nor approved by Jiangsu Nova. To conceal the trip, Hai Zhao submitted leave requests through Jiangsu Nova's internal OA system and submitted his original travel receipts to Xiujuan Li; Bin Ren paid Hai Zhao for those expenses.

103. From December 7 through December 9, 2025, and again on December 15, 2025, Hai Zhao traveled to Ningbo at the direction of Bin Ren and Xiujuan Li, with his travel expenses

paid by Bin Ren. On or about December 18, 2025, Defendants also reimbursed Hai Zhao for the purchase of a computer. None of these trips were assigned or approved by Jiangsu Nova.

104. Ningbo Beizhi was formed on or about February 14, 2026, as a wholly owned subsidiary of Ningbo Beiling, which was established on or about December 24, 2025. Upon information and belief, Ningbo Beizhi was formed for the purpose of conducting export trading operations on behalf of Ningbo Beiling.

105. In or about March 2026, while secretly performing work for the Competing Ningbo Entities, Hai Zhao informed Jiangsu Nova that he intended to resign from his employment, citing health concerns. Hai Zhao did not submit a formal resignation at that time.

106. On or about July 1, 2026, Jiangsu Nova discovered that Hai Zhao and Liqing Rui had been performing work for Ningbo Vichnet, Ningbo Beiling, and Ningbo Beizhi beginning in or about August 2025.

107. Jiangsu Nova further discovered that, during 2025, personnel associated with its U.S. operations who had previously used Jiangsu Nova email accounts transitioned to email accounts bearing the "starnova" domain. This transition, which was neither authorized nor disclosed to Plaintiffs, severed Plaintiffs' ability to monitor communications relating to their U.S. operations and further concealed Defendants' activities.

108. In or about May 2026, Bin Ren, under the pretext of supervising product quality at Anhui Nova's manufacturing facility, dispatched personnel to Anhui Nova's factory and directed them to demand that Anhui Nova's factory manager provide all manufacturing process routes and production specifications. The stated purpose of quality supervision was false; upon information and belief, the true purpose was to obtain Plaintiffs' proprietary manufacturing processes for the benefit of the Competing Ningbo Entities.

109. In or about June 2026, Shao Tsu Liu, Star Nova's Vice President of Operations and also President and registered agent of Precise Installer, added Hai Zhao to two shared folders on a cloud-based file-sharing platform named "Beiling" and "Vichnet," which corresponded to Ningbo Beiling and Ningbo Vichnet, respectively, as reflected in folder-access notification emails in Hai Zhao's Jiangsu Nova email account.

110. Upon information and belief, Hai Zhao used those shared folders to provide Plaintiffs' confidential, proprietary, and business information to Ningbo Beiling, Ningbo Vichnet, and Defendants.

111. On or about July 14, 2026, Hai Zhao resigned from Jiangsu Nova. At the time of his departure, Hai Zhao signed a "Personal Device Non-Retention of Trade Secrets Commitment Letter," pursuant to which he represented that his personal devices did not contain any of Jiangsu Nova's trade secrets and agreed not to disclose Jiangsu Nova's trade secrets to any third party.

112. A true and accurate copy of the "Personal Device Non-Retention of Trade Secrets Commitment Letter" is attached hereto as **Exhibit 2**.

113. Upon inspection, the office computer returned by Hai Zhao had been formatted, and all data had been deleted and could not be recovered.

114. On or about July 24, 2026, Ningbo Beizhi established a new affiliate, Ningbo Beiling Cloud.

115. On or about July 30, 2026, Bin Ren sent a message to Jiangsu Nova's GM alleging that fireproof boards supplied by Jiangsu Nova had quality defects. Upon information and belief, this allegation was false and was made to deflect attention from the fact that the quality defects were attributable to products manufactured by the Competing Ningbo Entities that Bin Ren himself had engaged to replace Plaintiffs as suppliers.

116. On or about August 17, 2026, during a meeting in the United States among Jiangsu Nova's Chairman, Jiangsu Nova's GM, and Shao Tsu Liu, Shao Tsu Liu confirmed that the fireproof board quality issues raised by Bin Ren were not attributable to products supplied by Jiangsu Nova, but rather to products supplied by Ningbo Vichnet.

117. On or about September 7, 2026, during a communication with Jiangsu Nova's Chairman, Shao Tsu Liu requested that Hai Zhao and Liqing Rui be permitted to work at Star Nova, stating in substance that because Hai Zhao had signed a trade secret non-disclosure commitment letter upon his departure from Jiangsu Nova, Hai Zhao "did not dare to openly go work at" Ningbo Beiling. This statement reflects Defendants' awareness that Hai Zhao's work for the Competing Ningbo Entities involved the use of Plaintiffs' trade secrets and that the non-disclosure commitment prohibited such activities.

118. U.S. customs import records reflect that, from at least May 2026 through June 2026, Precise Installer imported AWS MARS MODULE products and steel brackets in which Ningbo Beizhi was identified as the shipper. The shipments were delivered to South Bend, Indiana — the same address used by Berrien Star Engineering.

119. U.S. customs import records further reflect that, from at least July 2026 through September 2026, Berrien Star Engineering imported AWS MARS MODULE products, steel brackets, and wire mesh cable tray products in which Ningbo Beizhi and Ningbo Vichnet were identified as the shippers. The shipments comprised multiple full container loads delivered to South Bend, Indiana.

120. Upon information and belief, the AWS MARS MODULE products and related components imported by Precise Installer and Berrien Star Engineering from the Competing Ningbo Entities were subsequently marketed and sold by Star Nova to Amazon using Jiangsu

Nova's and Anhui Nova's supplier-manufacturer certification, and represented to Amazon as products manufactured by Plaintiffs, without Plaintiffs' knowledge, consent, or authorization.

121. A review of U.S. customs import data for July through September 2026 revealed that Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, and, upon information and belief, other entities controlled by or affiliated with Defendants continued to import AWS MARS MODULE products from the Competing Ningbo Entities and other Ningbo-based entities.

**G. Termination of Amazon Orders**

122. On or about January 27, 2026, Plaintiffs held a conference call with Bin Ren regarding Star Nova's overdue payments to Jiangsu Nova and Anhui Nova. During the call, Bin Ren requested that payment terms be extended to five to six months after shipment.

123. Jiangsu Nova and Anhui Nova agreed to extend Star Nova's payment terms, conditioned on Star Nova providing monthly financial and bank statements. Bin Ren failed to provide those statements.

124. On or about June 19, 2026, during a conference call with representatives of Jiangsu Nova following demands for payment and disclosure of financial information, Bin Ren orally resigned as President of Star Nova. During the same call, Bin Ren demanded that Jiangsu Nova send personnel to take over Star Nova's operations within three months and stated that, if Jiangsu Nova failed to do so, he would dissolve Star Nova at the end of that period. Bin Ren stated that Star Nova would place no new orders with Jiangsu Nova or Anhui Nova for the following three months and canceled existing Amazon orders for products manufactured by Jiangsu Nova and Anhui Nova.

125. On or about June 24, 2026, Star Nova separately notified Jiangsu Nova and Anhui Nova that it was suspending shipment of orders already placed. Bin Ren further asserted the right to suspend cooperation with Jiangsu Nova and to withhold payments owed to Jiangsu Nova and Anhui Nova.

126. As a result of Bin Ren's cancellation and suspension of Amazon orders, Anhui Nova lost its sole source of demand for the AWS MARS MODULE and was compelled to cease production and shut down its manufacturing operations beginning in June 2026. Goods that Jiangsu Nova and Anhui Nova had already manufactured to fill Star Nova's orders, valued at $1,392,702.52, were left unshipped.

127. On or about July 1, 2026, Jiangsu Nova's Chairman sent a written notice to Amazon advising Amazon to temporarily suspend payments to Star Nova and Berrien Star Engineering, notifying Amazon that Bin Ren was no longer the Company's authorized representative, and confirming Jiangsu Nova's commitment to fulfilling all existing and future Amazon purchase orders without interruption.

128. Despite the foregoing notice and Plaintiffs' multiple follow-up requests to Amazon, Plaintiffs have been unable to obtain access to Star Nova's Amazon accounts, credentials, or communication channels.

129. On or about July 2, 2026, Bin Ren notified Jiangsu Nova and Anhui Nova that payments otherwise due to Jiangsu Nova and Anhui Nova would be suspended.

130. On or about July 3, 2026, Jiangsu Nova's Chairman directed Bin Ren to commence the transition of his duties and to provide all company records, financial information, and other materials necessary for the orderly transition of Star Nova's operations. Bin Ren failed to comply with any aspect of this directive.

**H. Continued Obstruction**

131. On or about July 16, 2026, counsel for Bin Ren sent a written demand letter (the "**Ren Demand Letter**") to Jiangsu Nova's Chairman demanding that Plaintiffs retract the July 1 notice sent to Amazon and asserting that Bin Ren remained the duly appointed President of Star Nova. The Ren Demand Letter did not address Bin Ren's diversion of company funds to Berrien Star Engineering, his failure to provide Star Nova's financial records, or his cancellation and suspension of Amazon orders.

132. The Ren Demand Letter falsely asserted that Bin Ren "has continuously served" as President and "has not resigned," directly contradicting Bin Ren's own oral resignation on June 19, 2026. The Ren Demand Letter further attributed product quality issues to Jiangsu Nova, when in fact the quality defects were attributable to products manufactured by the Competing Ningbo Entities, as Shao Tsu Liu himself later confirmed during the August 17, 2026 meeting.

133. On or about July 20, 2026, Jiangsu Nova's Chairman, Jiangsu Nova's GM, and an intermediary acting on behalf of Bin Ren met with Bin Ren in Shanghai. The parties failed to reach agreement on the core issues in dispute. Plaintiffs demanded that Bin Ren provide a written response and stated that legal proceedings would be initiated if negotiations failed.

134. On or about July 28, 2026, Star Nova made a partial payment of $500,000 to Jiangsu Nova. The intermediary communicated that both sides should remain calm and avoid jeopardizing the Amazon business.

135. Upon information and belief, this partial payment was made to forestall litigation while Defendants continued to divert Plaintiffs' business to the Competing Ningbo Entities.

136. On or about July 31, 2026, Jiangsu Nova, as the holder of 58% of the membership interests in Star Nova and constituting a Majority in Interest of the Members pursuant to Section

5.1.2 of the Operating Agreement, adopted a Written Resolution (the "**Written Resolution**") that, among other things: (a) confirmed, accepted, and acknowledged the oral resignation of Bin Ren as President of Star Nova, effective as of June 19, 2026; (b) ratified and authorized the July 1, 2026 letter to Amazon, including the direction to suspend payments, the revocation of Bin Ren's authority to access or administer Star Nova's Amazon vendor account, and the appointment of Boyang Xu as the Company's sole authorized representative for all purposes relating to the Amazon vendor account; (c) authorized Star Nova to commence and prosecute this civil action; and (d) ratified all actions taken by Jiangsu Nova and Zhenglin Xu in his capacity as Chairman in connection with the management and operation of the Company.

137. A true and accurate copy of the Written Resolution is attached hereto as **Exhibit 3**.

138. Despite the Written Resolution formally confirming his removal as President and revoking his authority over Star Nova's Amazon accounts, Bin Ren has refused to relinquish control. As of the date of filing, Bin Ren continues to maintain sole control over Star Nova's Amazon accounts, credentials, order systems, and communication channels, and continues to accept purchase orders and direct payments on behalf of Star Nova without authorization.

139. On or about August 17, 2026, during a meeting in the United States, Shao Tsu Liu represented on behalf of Star Nova that an audit of Star Nova's financial records from 2024 through June 2026 would be conducted, that Jiangsu Nova's GM would assume responsibility for managing Star Nova's financial affairs, and that Star Nova would promptly resume placing orders with Jiangsu Nova and Anhui Nova. These representations induced Plaintiffs to further delay the filing of this action.

140. Despite these assurances, Defendants failed to honor any of these commitments. No audit was conducted. Jiangsu Nova's GM was not granted access to Star Nova's financial

records. The resumed orders were directed not to Star Nova but to Northstar — a recently formed entity at the same warehouse address as Star Nova, as alleged above.

141. Upon information and belief, the August 17 commitments were a deliberate delay tactic designed to forestall litigation while Defendants continued to divert Plaintiffs' business and conceal the scope of their misappropriation.

142. On or about September 12, 2026, Jiangsu Nova discovered that Shao Tsu Liu had suspended shipments of products from Jiangsu Nova and Anhui Nova and instructed operations personnel to await further notice, without Plaintiffs' knowledge or authorization.

143. This suspension, occurring while Defendants simultaneously continued importing AWS MARS MODULE products from the Competing Ningbo Entities, confirmed that Defendants' negotiations had been conducted in bad faith.

144. In or about September 2026, Shao Tsu Liu, Star Nova's VP of Operations, proposed draft shareholder resolutions for Star Nova that, among other things, would have required all shareholders and employees of both Jiangsu Nova and Star Nova to refrain from making any disclosures, accusations, or complaints to Chinese or United States government agencies, Amazon, or other third parties.

145. Upon information and belief, this provision was designed to prevent Jiangsu Nova from reporting Defendants' misconduct to law enforcement or notifying Amazon of the unauthorized product substitution and payment diversion.

146. In or about September 2026, Shao Tsu Liu and Xiujuan Li obstructed Plaintiffs' efforts to conduct an audit of Star Nova's financial records. Xiujuan Li initially represented that no audit firm would accept the engagement and directed Jiangsu Nova to find its own auditor. When Jiangsu Nova retained an audit firm that agreed to perform the audit, Star Nova's VP of

Operations proposed limiting the audit scope to exclude the period from 2024 through June 2026 — the very period during which the unauthorized diversions occurred. Plaintiffs rejected both the scope limitation and the obstructive conditions.

147. To date, Bin Ren has failed and refused to provide Star Nova's financial records, transfer control of Star Nova to Jiangsu Nova's designated representatives, or relinquish access to Star Nova's Amazon accounts, credentials, and communication channels, despite Plaintiffs' repeated demands. Bin Ren remains in a position to make unauthorized representations to Amazon, accept or facilitate orders, direct payments, and conceal evidence of his activities.

148. As of September 29, 2026, Star Nova owed Jiangsu Nova and its affiliated entities (including Anhui Nova) $17,691,934.09 and RMB 5,424,701.28 for goods manufactured, sold, and/or delivered, but not paid for. In addition, as of June 30, 2026, Jiangsu Nova and its affiliated entities had completed manufacture of goods ordered by Star Nova, valued at $1,392,702.52, that Star Nova has not accepted for shipment.

149. As of the date of filing, neither Bin Ren, Xiujuan Li, nor Shao Tsu Liu has responded to Plaintiffs' communications sent on September 14, 2026. Bin Ren has continued to fail to turn over Star Nova's Amazon accounts, credentials, and communication channels. Bin Ren, Xiujuan Li, and Shao Tsu Liu have continued to refuse to provide Plaintiffs with Star Nova's financial information and bank statements.

150. Upon information and belief, Defendants have continued to communicate with Amazon, continued to accept purchase orders from Amazon, continued to supply Amazon with AWS MARS MODULE products manufactured by the Competing Ningbo Entities under the false representation that such products were manufactured by Jiangsu Nova and Anhui Nova, continued to accept payments from Amazon, and continued to divert Plaintiffs' funds to Berrien Star

Engineering, Corehire, Berrien Star, Precise Installer, Northstar, and other entities owned or controlled by Defendants.

151. Defendants' coordinated pattern of delay, deception, and obstruction — including the false quality allegations, the pretextual negotiations, the demand that Plaintiffs waive their legal rights as a condition of receiving their own company's financial records, and the continued diversion of business to entities controlled by Defendants — demonstrates that Defendants have no intention of complying with their obligations and that Plaintiffs have no adequate remedy absent judicial intervention.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **BREACH OF CONTRACT — THE OPERATING AGREEMENT**
### **(Against Defendants Bin Ren and Xiujuan Li)**

152. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

153. The Operating Agreement of Star Nova, entered into on or about January 13, 2015 by and among Jiangsu Nova, Bin Ren, Xiujuan Li, and Shuqing Sun, constitutes a valid, binding, and enforceable contract supported by adequate consideration.

154. Jiangsu Nova performed all conditions, covenants, and obligations required of it under the Operating Agreement, including contributing RMB 1,740,000 in exchange for its 58% membership interest by wiring $300,000 to Star Nova's Old National Bank account on November 10, 2015 as a "capital contribution."

155. Defendants Bin Ren and Xiujuan Li materially breached the Operating Agreement by (a) failing to fully fund their respective capital contributions of RMB 660,000 and RMB 300,000; (b) diverting Star Nova's business, customer orders, shipments, and payment streams to

Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, and the Competing Ningbo Entities, and other entities controlled by or affiliated with Defendants; (c) causing Star Nova's books, records, and bank accounts to be maintained in a manner that concealed Jiangsu Nova's ownership interest and the true state of Star Nova's affairs; (d) refusing to provide Star Nova's financial records; and (e) failing to cause any distribution to be made to Jiangsu Nova notwithstanding Jiangsu Nova's 58% membership interest.

156. As a direct and proximate result of Bin Ren's and Xiujuan Li's breaches of the Operating Agreement, Jiangsu Nova and Star Nova have suffered damages in an amount to be determined at trial, exclusive of interest and costs.

**WHEREFORE,** Jiangsu Nova and Star Nova respectfully request that the Court enter judgment against Defendants Bin Ren and Xiujuan Li, jointly and severally, for compensatory damages in an amount proven at trial, pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT II
## UNJUST ENRICHMENT
## (Against All Defendants)

157. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

158. Plaintiffs plead this claim in the alternative to Plaintiffs' breach of contract, breach of fiduciary duty, conversion, and other claims for which there may exist an adequate remedy at law.

159. As to Defendants Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, Shao Tsu Liu, and Min Chun Lee, who are not parties to the Operating

Agreement and with whom Plaintiffs have no contractual relationship, this claim is asserted as an independent basis for relief.

160. Plaintiffs conferred measurable benefits upon Defendants, including goods manufactured, sold and/or delivered, business opportunities, customer relationships, and confidential information.

161. Defendants knowingly accepted and retained those benefits, and it would be unjust for them to retain the benefits without payment of their value, including the diverted payments, shipments, and revenues and the outstanding balance of $17,691,934.09 and RMB 5,424,701.28.

162. Defendants have been unjustly enriched at Plaintiffs' expense.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against all Defendants, jointly and severally, for restitution and disgorgement of all unjust enrichment, a constructive trust, pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT III
## BREACH OF FIDUCIARY DUTY
## (Against Defendants Bin Ren and Xiujuan Li)

163. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

164. As members, managers, and officers of Star Nova — Bin Ren as President and Xiujuan Li as Chief Financial Officer — Bin Ren and Xiujuan Li each owed Star Nova and its members, including Plaintiffs, fiduciary duties of loyalty, care, good faith, and fair dealing.

165. Bin Ren and Xiujuan Li breached their fiduciary duties by, among other things: (a) diverting Plaintiffs' business opportunities, customer orders, shipments, and revenues to Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, and the Competing Ningbo

Entities, and other entities controlled by or affiliated with Defendants; (b) causing the consignee on Anhui Nova's export declarations to be changed from Star Nova to entities they controlled; (c) requesting that Amazon remit payments owed to Star Nova to Berrien Star Engineering and falsely representing that Berrien Star Engineering was a subsidiary of Star Nova; (d) misappropriating and concealing Star Nova's funds, financial records, and corporate property; (e) causing bank records to reflect ownership interests inconsistent with the Operating Agreement; (f) engaging in self-dealing for their personal benefit and the benefit of entities they owned or controlled; (g) refusing to transition duties, relinquish control of Star Nova's Amazon accounts, credentials, and communication channels, and transfer company records after Bin Ren's oral resignation on June 19, 2026 and the Written Resolution formally confirming his removal; and (h) obstructing Plaintiffs' efforts to conduct an audit of Star Nova's financial records and making false commitments during the August 17, 2026 meeting to induce Plaintiffs to delay exercising their legal rights.

166. Bin Ren and Xiujuan Li acted intentionally, willfully, and in conscious disregard of Plaintiffs' rights.

167. As a direct and proximate result of these breaches, Plaintiffs have suffered substantial damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against Defendants Bin Ren and Xiujuan Li, jointly and severally, for compensatory and punitive damages, disgorgement of all wrongfully obtained profits and benefits, a constructive trust, pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

**COUNT IV**
**<u>AIDING AND ABETTING BREACH OF FIDUCIARY DUTY</u>**
**(Against Defendants Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, Shao Tsu Liu, and Min Chun Lee)**

168. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

169. Bin Ren and Xiujuan Li owed and breached fiduciary duties to Star Nova and Jiangsu Nova as set forth above.

170. Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar, each formed or controlled by Bin Ren and/or Xiujuan Li, had knowledge of those fiduciary duties and knowingly and substantially assisted and participated in the breaches by, among other things, serving as the recipients of diverted consignments, payments, and business opportunities that rightfully belonged to Plaintiffs.

171. Shao Tsu Liu, as Star Nova's Vice President of Operations and President and registered agent of Precise Installer, had knowledge of Bin Ren's and Xiujuan Li's fiduciary duties and knowingly and substantially assisted in the breaches by, among other things, facilitating the transfer of Plaintiffs' proprietary information to the Competing Ningbo Entities, suspending shipments from Plaintiffs without authorization, obstructing the audit of Star Nova's financial records, and directing consignees to entities controlled by Defendants.

172. Min Chun Lee, as President and registered agent of Berrien Star and the wife of Shao Tsu Liu, had knowledge of Bin Ren's and Xiujuan Li's fiduciary duties and knowingly and substantially assisted in the breaches by, among other things, managing and operating Berrien Star as a conduit for diverted goods and payments that rightfully belonged to Plaintiffs.

173. As a direct and proximate result of this substantial assistance, Plaintiffs have suffered damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against Defendants Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, Shao Tsu Liu, and Min Chun Lee, jointly and severally, for compensatory and punitive damages, disgorgement, a constructive trust, pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

**COUNT V**
**FRAUD**
**(Against All Defendants)**

174. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

175. Defendants, individually and in concert, engaged in a coordinated scheme of fraud and misrepresentation directed at Plaintiffs and Amazon, including but not limited to: (a) Bin Ren's representations to Amazon Japan on or about July 30, 2023, and to Amazon US on or about May 28, 2026, that Berrien Star Engineering was a subsidiary of Star Nova, made for the purpose of diverting payments owed to Star Nova; (b) Xiujuan Li's transmittal, on or about March 17, 2025, of financial materials purporting to relate to Star Nova to Jiangsu Nova's Chief Financial Officer, when in fact the materials included a bank statement belonging to Berrien Star Engineering, made for the purpose of concealing the diversion of funds; (c) Defendants' false representations that AWS MARS MODULE products manufactured by the Competing Ningbo Entities were manufactured by Jiangsu Nova and Anhui Nova, made for the purpose of marketing and selling unauthorized products under Plaintiffs' Amazon supplier-manufacturer certification; (d) Bin Ren's false allegation, on or about July 30, 2026, that fireproof boards supplied by Jiangsu Nova had quality defects, when in fact the defects were attributable to products manufactured by the Competing Ningbo Entities, made for the purpose of deflecting attention from Defendants'

unauthorized product substitution; and (e) the false commitments made by Shao Tsu Liu and other Defendants during the August 17, 2026 meeting that an audit of Star Nova's financial records would be conducted, that Jiangsu Nova's GM would assume responsibility for managing Star Nova's financial affairs, and that Star Nova would promptly resume placing orders with Jiangsu Nova and Anhui Nova, made for the purpose of inducing Plaintiffs to delay the filing of this action while Defendants continued to divert Plaintiffs' business.

176. These representations were false when made. Defendants knew they were false or made them with reckless disregard for their truth.

177. Defendants made the foregoing misrepresentations with the intent to deceive Plaintiffs, Amazon, and others, and to induce reliance thereon, including for the purpose of diverting payments owed to Star Nova, concealing the diversion of funds and business opportunities, forestalling litigation, and shielding evidence of their misconduct.

178. Plaintiffs justifiably relied on the foregoing misrepresentations to their detriment. Among other things, Plaintiffs relied on the August 17, 2026 commitments by further delaying the filing of this action while Defendants continued to divert Plaintiffs' business to the Competing Ningbo Entities. Amazon relied on Bin Ren's misrepresentations in remitting or redirecting payments to Berrien Star Engineering. And Plaintiffs relied on Xiujuan Li's financial materials in believing that Star Nova's financial affairs were being properly administered.

179. As a direct and proximate result of Defendants' fraud, Plaintiffs have suffered damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against all Defendants, jointly and severally, for compensatory and punitive damages, disgorgement of all

wrongfully obtained profits and benefits, pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

**COUNT VI**
**CONVERSION**
**(Against All Defendants)**

180. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

181. Plaintiffs have an immediate right to possess the payments, funds, goods, revenues, and products generated by the AWS MARS MODULE business, including payments owed by Amazon to Star Nova, AWS MARS MODULE products manufactured by Jiangsu Nova and Anhui Nova, and the proceeds from the sale of such products.

182. Defendants knowingly and intentionally exerted unauthorized control over Plaintiffs' property by, among other things: (a) causing Amazon to remit payments otherwise payable to Star Nova to bank accounts maintained by Berrien Star Engineering; (b) changing the consignee on Anhui Nova's export declarations from Star Nova to Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar, and other entities controlled by or affiliated with Defendants, thereby diverting physical shipments of AWS MARS MODULE products manufactured by Plaintiffs to entities controlled by Defendants; (c) accepting, receiving, and retaining diverted goods, payments, and revenues through Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar, and other entities controlled by or affiliated with Defendants; and (d) causing AWS MARS MODULE products manufactured by the Competing Ningbo Entities to be sold to Amazon under Plaintiffs' supplier-manufacturer certification and retaining the proceeds thereof. All of the foregoing was done without Plaintiffs' knowledge, consent, or authorization.

183. As a direct and proximate result of Defendants' conversion, Plaintiffs have suffered damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against all Defendants, jointly and severally, for compensatory damages, treble damages and attorneys' fees as permitted by law, pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

**COUNT VII**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**
**(Against All Defendants)**

184. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

185. Plaintiffs had valid and existing business relationships and reasonable expectancies with Amazon and with Star Nova concerning the manufacture, supply, and sale of AWS products and AWS MARS MODULE products. Specifically, Jiangsu Nova and Anhui Nova had an established supplier-manufacturer relationship with Amazon, pursuant to which Jiangsu Nova was one of a small number of approved supplier-manufacturers worldwide — and the only approved manufacturer in China — of the AWS MARS MODULE, which Jiangsu Nova manufactured through its wholly owned subsidiary, Anhui Nova. Plaintiffs also had a reasonable expectancy of continued business with Amazon through Star Nova, including the expectation of receiving payment for goods manufactured and delivered.

186. Defendants knew of these business relationships and expectancies. Bin Ren, as President of Star Nova, had direct knowledge of and access to all aspects of Plaintiffs' Amazon business, including customer accounts, order systems, credentials, and communication channels. Xiujuan Li, as Chief Financial Officer, had direct knowledge of the financial relationships. Shao

Tsu Liu, as Star Nova's Vice President of Operations, had operational knowledge of supply chain and shipment logistics.

187. Defendants intentionally and without justification interfered with those relationships by, among other things: (a) changing consignees on Anhui Nova's export declarations from Star Nova to Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar, and other entities controlled by or affiliated with Defendants, thereby diverting physical shipments to entities controlled by Defendants; (b) redirecting Amazon payments owed to Star Nova to bank accounts maintained by Berrien Star Engineering; (c) causing AWS MARS MODULE products manufactured by the Competing Ningbo Entities to be sold to Amazon under Plaintiffs' supplier-manufacturer certification, thereby usurping Plaintiffs' exclusive manufacturing relationship with Amazon; (d) canceling existing Amazon orders and suspending future Amazon orders for products manufactured by Jiangsu Nova and Anhui Nova; (e) Bin Ren's continued maintenance of sole control over Star Nova's Amazon accounts, credentials, order systems, and communication channels after his removal as an authorized representative of Star Nova, including continuing to communicate with Amazon, accept purchase orders, and direct payments on behalf of Star Nova despite being directed to transition those duties on July 3, 2026; (f) making false commitments during the August 17, 2026 meeting to audit Star Nova's finances, transition management to Jiangsu Nova's GM, and resume orders with Plaintiffs, thereby inducing Plaintiffs to delay exercising their rights while Defendants continued to divert business; and (g) obstructing Plaintiffs' efforts to conduct an audit of Star Nova's financial records and conditioning access to those records on Plaintiffs' execution of agreements designed to shield evidence of Defendants' misconduct.

188. Defendants' conduct was illegal, unjustified, and undertaken through unlawful means, including fraud and breach of fiduciary duty.

189. As a direct and proximate result, Plaintiffs have been excluded from their own Amazon business. Bin Ren continues to maintain sole control over Star Nova's Amazon accounts, credentials, and communication channels and continues to accept purchase orders and direct payments despite his removal as an authorized representative. Plaintiffs lost their sole source of demand for the AWS MARS MODULE, and Anhui Nova was compelled to shut down its manufacturing operations beginning in June 2026. Plaintiffs have been unable to recover their capital investment in the manufacturing facility and have suffered damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against all Defendants, jointly and severally, for compensatory and punitive damages, disgorgement of all wrongfully obtained profits and benefits, injunctive relief requiring Defendants to transfer control of Star Nova's Amazon accounts, credentials, and communication channels to Plaintiffs' designated representatives, pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

**COUNT VIII**
**MISAPPROPRIATION OF TRADE SECRETS**
**(Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.)**
**(Against All Defendants)**

190. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

191. Plaintiffs own confidential, proprietary, and trade secret information relating to the design, engineering, manufacture, specifications, tooling, pricing, and customer requirements of the AWS MARS MODULE and its Amazon business. The AWS MARS MODULE is a custom-

designed server rack system — including beams, columns, and cantilever arms — engineered exclusively for Amazon Web Services cloud computing data centers. Jiangsu Nova developed this product over a multi-year Amazon qualification process, culminating in Jiangsu Nova's approval as one of a small number of supplier-manufacturers worldwide and the only approved manufacturer in China. The proprietary information at issue derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use, and is used in interstate and foreign commerce.

192. Plaintiffs took reasonable measures to keep such information secret, including: requiring real-name registration for entry to Jiangsu Nova's facilities, with unregistered persons prohibited from entering office and research-and-development areas; implementing IT-managed access controls, including login passwords for employee computers and role-based system access permissions; restricting access to AWS MARS MODULE information to approximately ten employees out of a workforce of approximately 500; requiring confidentiality commitments from employees with access to trade secret information, including a confidentiality agreement signed by Hai Zhao upon his hiring; maintaining proprietary manufacturing processes within controlled facilities; and limiting the distribution of product engineering data and supplier pricing to authorized personnel.

193. Defendants misappropriated Plaintiffs' trade secrets by, among other things: (a) directing and financing the creation of the Competing Ningbo Entities and supplying them with Plaintiffs' proprietary manufacturing processes, product specifications, and engineering data necessary to manufacture AWS MARS MODULE products; (b) Bin Ren and Xiujuan Li directing Hai Zhao, a front-end technical engineer employed by Jiangsu Nova with access to proprietary

AWS MARS MODULE specifications and manufacturing data, to travel to Ningbo Vichnet in August 2025 and to Ningbo in December 2025 to provide technical assistance to the Competing Ningbo Entities, with travel expenses processed through Xiujuan Li and paid by Bin Ren to conceal the trips from Plaintiffs; (c) Shao Tsu Liu, Star Nova's Vice President of Operations, adding Hai Zhao in June 2026 to shared folders on a cloud-based file-sharing platform named "Beiling" and "Vichnet," which corresponded to Ningbo Beiling and Ningbo Vichnet, through which Plaintiffs' confidential and proprietary information was provided to those entities; (d) Liqing Rui, a salesperson in Jiangsu Nova's International Department responsible for U.S. business operations, performing work for Ningbo Vichnet and Ningbo Beizhi beginning in or about August 2025, providing those entities with access to Plaintiffs' customer relationships, order information, and business data; and (e) using Plaintiffs' trade secrets to manufacture and sell competing AWS MARS MODULE products to Amazon under Plaintiffs' supplier-manufacturer certification, without Plaintiffs' consent and through improper means and in breach of duties to maintain secrecy.

194. The Competing Ningbo Entities could not have independently developed the technology, manufacturing processes, and know-how necessary to produce the AWS MARS MODULE within the timeframe in which they commenced operations. Ningbo Beiling was established on or about December 24, 2025, and its subsidiary Ningbo Beizhi was formed on or about February 14, 2026. Yet Ningbo Beizhi began exporting AWS MARS MODULE products to Berrien Star Engineering and Precise Installer as early as March 28, 2026. The rapid commencement of manufacturing operations confirms that Defendants provided the Competing Ningbo Entities with Plaintiffs' trade secrets.

195. Upon his resignation from Jiangsu Nova on or about July 14, 2026, Hai Zhao signed a "Personal Device Non-Retention of Trade Secrets Commitment Letter" representing that his personal devices did not contain Plaintiffs' trade secrets and agreeing not to disclose such trade secrets to any third party. Upon inspection, the office computer returned by Hai Zhao had been formatted, and all data had been deleted and could not be recovered. The destruction of data and the timing of Hai Zhao's departure — after months of secretly providing technical assistance to the Competing Ningbo Entities — evidence Defendants' consciousness of the wrongful nature of the misappropriation.

196. Defendants' misappropriation is ongoing. A review of U.S. customs import data for July through September 2026 revealed that Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar continued to import AWS MARS MODULE products manufactured by the Competing Ningbo Entities using Plaintiffs' misappropriated trade secrets. On or about July 24, 2026, Ningbo Beizhi established a new affiliate, Ningbo Beiling Cloud Internet Equipment Co., Ltd., evidencing the continued expansion of the competing manufacturing operation built on Plaintiffs' trade secrets.

197. Defendants' misappropriation was willful and malicious.

198. As a direct and proximate result, Plaintiffs have suffered damages, and Defendants have been unjustly enriched, in amounts to be proven at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against all Defendants, jointly and severally, for actual damages, unjust enrichment damages, a reasonable royalty, exemplary damages of up to twice the damages awarded, attorneys' fees, injunctive relief, pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

**COUNT IX**
**MISAPPROPRIATION OF TRADE SECRETS**
**(Washington Uniform Trade Secrets Act, Wash. Rev. Code § 19.108.010)**
**(Against All Defendants)**

199. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

200. Plaintiffs' confidential and proprietary information described above constitutes trade secrets within the meaning of the Washington Uniform Trade Secrets Act, Wash. Rev. Code § 19.108.010.

201. Section 10.2 of the Operating Agreement provides that the rights and obligations of the parties thereunder are governed by the laws of the State of Washington. Bin Ren and Xiujuan Li, as parties to the Operating Agreement, are subject to Washington law under that provision. Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, Shao Tsu Liu, and Min Chun Lee are not parties to the Operating Agreement but are also reached under Washington law because the trade secret misappropriation was directed at appropriating the proprietary information, business, and opportunities of Star Nova, a Washington-law-governed entity. Accordingly, the Washington Uniform Trade Secrets Act provides the applicable basis for relief against all Defendants.

202. Defendants misappropriated those trade secrets through improper means and unauthorized disclosure and use, as set forth above, with knowledge or reason to know that the information was acquired through improper means or breach of a duty to maintain its secrecy.

203. Defendants' misappropriation was willful and malicious.

204. As a direct and proximate result, Plaintiffs have suffered damages, and Defendants have been unjustly enriched, in amounts to be proven at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against all Defendants, jointly and severally, for actual damages, unjust enrichment damages, a reasonable royalty, exemplary damages, attorneys' fees, injunctive relief prohibiting Defendants from further use, disclosure, or misappropriation of Plaintiffs' trade secrets and from manufacturing, marketing, or selling AWS MARS MODULE products using Plaintiffs' proprietary information, pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

**COUNT X**
**MISAPPROPRIATION OF TRADE SECRETS**
**(Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3-1 et seq.)**
**(Against All Defendants)**

205. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

206. Plaintiffs plead this claim in the alternative to Plaintiffs' claim under the Washington Uniform Trade Secrets Act.

207. Plaintiffs' confidential and proprietary information described above constitutes trade secrets within the meaning of the Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3-2.

208. The Operating Agreement's choice-of-law provision governs the rights and obligations of the parties to the Operating Agreement. However, several Defendants — including Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, Shao Tsu Liu, and Min Chun Lee — are not parties to the Operating Agreement and are not bound by its choice-of-law provision. Star Nova is an Indiana limited liability company, the misappropriated trade secrets were used in connection with business operations conducted in Indiana, and the products at issue were imported into and distributed from Indiana. Accordingly, the Indiana Uniform Trade Secrets Act provides an independent and alternative basis for relief.

209. Defendants misappropriated those trade secrets through improper means and unauthorized disclosure and use, as set forth above, with knowledge or reason to know that the information was acquired through improper means or breach of a duty to maintain its secrecy.

210. Defendants' misappropriation was willful and malicious.

211. As a direct and proximate result, Plaintiffs have suffered damages, and Defendants have been unjustly enriched, in amounts to be proven at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against all Defendants, jointly and severally, for actual damages, unjust enrichment damages, a reasonable royalty, exemplary damages as permitted under Ind. Code § 24-2-3-4, attorneys' fees as permitted under Ind. Code § 24-2-3-5, injunctive relief, pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT XI
## FALSE DESIGNATION OF ORIGIN
## (Lanham Act, 15 U.S.C. § 1125(a))
## (Against All Defendants)

212. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

213. Plaintiffs are commercial participants in the market for AWS MARS MODULE products sold to Amazon. Plaintiffs' competitive and reputational interests in manufacturing, supplying, and selling AWS MARS MODULE products through Star Nova fall within the zone of interests protected by 15 U.S.C. § 1125(a). Jiangsu Nova holds Amazon's supplier-manufacturer approval, and Anhui Nova, its wholly owned subsidiary, manufactures AWS MARS MODULE products under that approval, and are the displaced manufacturers whose goodwill and certification Defendants exploited. Plaintiffs' injuries — including lost sales, displacement from the Amazon

supply chain, damage to business reputation, and dilution of the value of their certification — are proximately caused by Defendants' false designation of origin.

214. Defendants, in connection with goods placed in interstate and foreign commerce, used false designations of origin and false or misleading descriptions and representations of fact by causing AWS MARS MODULE products manufactured abroad by Ningbo Vichnet, Ningbo Beiling, Ningbo Beizhi, and/or other Competing Ningbo Entities to be represented, marketed, and sold to Amazon as products manufactured by Jiangsu Nova and Anhui Nova. Those goods were imported into the United States through U.S. customs, distributed from facilities in Indiana, and sold to Amazon customers throughout the United States, thereby placing the goods in interstate and foreign commerce.

215. Such conduct is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, and as to the origin, sponsorship, or approval of Defendants' goods by Plaintiffs, in violation of 15 U.S.C. § 1125(a)(1)(A).

216. Such conduct also constitutes a false or misleading representation of fact in commercial advertising or promotion which misrepresents the nature, characteristics, qualities, and geographic origin of Defendants' goods, in violation of 15 U.S.C. § 1125(a)(1)(B). Defendants' false representations were disseminated through Amazon's supplier-qualification systems, order platforms, customs import documentation filed with the United States, and shipping records, reaching Amazon personnel, third-party logistics providers, installation teams, and others in the Amazon supply chain, and thereby constituted commercial advertising or promotion within the meaning of 15 U.S.C. § 1125(a)(1)(B). In the alternative, because Amazon is effectively the

sole purchaser of AWS MARS MODULE products worldwide, representations to Amazon constituted dissemination to the entirety of the relevant purchasing public.

217. The Competing Ningbo Entities' products were of different and potentially inferior quality to those manufactured by Jiangsu Nova and Anhui Nova. This risk was evidenced by Bin Ren's own allegation on or about July 30, 2026 that fireproof boards had quality defects — defects attributable not to Plaintiffs' products but to products manufactured by the Competing Ningbo Entities, as confirmed by Shao Tsu Liu during the August 17, 2026 meeting. By selling products of unknown or inferior quality under Plaintiffs' name and Amazon supplier-manufacturer certification, Defendants created a material risk to Plaintiffs' reputation, the integrity of their Amazon certification, and the safety and quality expectations of Amazon and its end users.

218. Defendants' false representations were made knowingly, willfully, and with the intent to deceive Amazon and to trade upon the reputation, goodwill, and Amazon supplier-manufacturer certification of Jiangsu Nova and Anhui Nova.

219. As a direct and proximate result, Plaintiffs have suffered damages, including lost sales, damage to business reputation, and dilution of the value of their Amazon supplier-manufacturer certification, in an amount to be proven at trial.

220. Defendants' false designation of origin is ongoing. As of the date of filing, U.S. customs import data confirms that Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar continued to import AWS MARS MODULE products manufactured by the Competing Ningbo Entities, and, upon information and belief, Defendants continued to represent, market, and sell those products to Amazon as products manufactured by Jiangsu Nova and Anhui Nova. On or about July 24, 2026, Ningbo Beizhi established a new affiliate, Ningbo Beiling Cloud Internet Equipment Co., Ltd., evidencing the continued expansion of the

unauthorized manufacturing operation. Unless enjoined, Defendants will continue to engage in false designation of origin, causing Plaintiffs irreparable harm for which there is no adequate remedy at law.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment awarding compensatory damages; Defendants' profits from the sale of falsely designated goods; treble damages and attorneys' fees as permitted under 15 U.S.C. § 1117; injunctive relief; pre-judgment and post-judgment interest; costs of suit; and such other relief as the Court deems just and proper.

## COUNT XII
## COMMON LAW UNFAIR COMPETITION
**(Washington Law)**
**(In the Alternative to Counts VIII and IX)**
**(Against All Defendants)**

221. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

222. To the extent the Court determines that the information at issue does not constitute protectable trade secrets under the Defend Trade Secrets Act or the Washington Uniform Trade Secrets Act, Plaintiffs assert this count in the alternative. The Operating Agreement's choice-of-law provision provides that the rights and obligations of the parties thereunder are governed by the laws of the State of Washington. Bin Ren and Xiujuan Li, as parties to the Operating Agreement, are subject to Washington law under that provision. Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, Shao Tsu Liu, and Min Chun Lee are not parties to the Operating Agreement but are subject to Washington common law because the unfair competitive acts were directed at appropriating the business, assets, and opportunities of Star Nova, a Washington-law-governed entity, and the diverted business flowed through Star Nova's operations, accounts, and

Amazon business relationships, all of which are governed by Washington law. Accordingly, Washington common law provides the applicable basis for relief against all Defendants.

223. Defendants engaged in unfair competitive practices by, among other things: (a) directly or indirectly creating, organizing, controlling, and directing Berrien Star Engineering and the Competing Ningbo Entities to compete with Plaintiffs using Plaintiffs' proprietary manufacturing processes, supplier relationships, and Amazon supplier-manufacturer certification; (b) diverting Star Nova's customer orders, shipments, and payment streams to entities owned or controlled by Defendants; (c) causing products manufactured by the Competing Ningbo Entities to be marketed and sold to Amazon as products of Jiangsu Nova and Anhui Nova; (d) exploiting positions of trust and authority within Star Nova to misappropriate corporate opportunities and resources for Defendants' personal benefit; and (e) concealing the foregoing conduct from Plaintiffs through manipulation of financial records, bank accounts, and corporate communications.

224. Defendants' conduct was undertaken through dishonest, unethical, and deceptive means, and was designed to and did unfairly appropriate for Defendants business opportunities, revenues, and competitive advantages that rightfully belonged to Plaintiffs.

225. Defendants' unfair competition was willful, deliberate, and undertaken in bad faith.

226. As a direct and proximate result of Defendants' unfair competitive practices, Plaintiffs have suffered damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against all Defendants, jointly and severally, for compensatory and punitive damages, disgorgement of all wrongfully obtained profits and benefits, injunctive relief, pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

**COUNT XIII**
**COMMON LAW UNFAIR COMPETITION**
**(Indiana Law)**
**(In the Alternative to Counts VIII and X)**
**(Against All Defendants)**

227. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

228. Plaintiffs plead this claim in the alternative to Plaintiffs' claims under the Defend Trade Secrets Act and the Indiana Uniform Trade Secrets Act.

229. The Operating Agreement's choice-of-law provision governs the rights and obligations of the parties to the Operating Agreement. However, several Defendants — including Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, Shao Tsu Liu, and Min Chun Lee — are not parties to the Operating Agreement and are not bound by its choice-of-law provision. Star Nova is an Indiana limited liability company, the unfair competitive acts were directed at business operations conducted in Indiana, and the diverted products were imported into and distributed from Indiana. Accordingly, Indiana common law provides an independent and alternative basis for relief.

230. To the extent the Court determines that the information at issue does not constitute protectable trade secrets under the Defend Trade Secrets Act or the Indiana Uniform Trade Secrets Act, Defendants engaged in unfair competitive practices by, among other things: (a) directly or indirectly creating, organizing, controlling, and directing Berrien Star Engineering and the Competing Ningbo Entities to compete with Plaintiffs using Plaintiffs' proprietary manufacturing processes, supplier relationships, and Amazon supplier-manufacturer certification; (b) diverting Star Nova's customer orders, shipments, and payment streams to entities owned or controlled by Defendants; (c) causing products manufactured by the Competing Ningbo Entities to be marketed

and sold to Amazon as products of Jiangsu Nova and Anhui Nova; (d) exploiting positions of trust and authority within Star Nova to misappropriate corporate opportunities and resources for Defendants' personal benefit; and (e) concealing the foregoing conduct from Plaintiffs through manipulation of financial records, bank accounts, and corporate communications.

231. Defendants' conduct was undertaken through dishonest, unethical, and deceptive means, and was designed to and did unfairly appropriate for Defendants business opportunities, revenues, and competitive advantages that rightfully belonged to Plaintiffs.

232. Defendants' unfair competition was willful, deliberate, and undertaken in bad faith.

233. As a direct and proximate result of Defendants' unfair competitive practices, Plaintiffs have suffered damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against all Defendants, jointly and severally, for compensatory and punitive damages, disgorgement of all wrongfully obtained profits and benefits, injunctive relief, pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

**COUNT XIV**
**CIVIL CONSPIRACY**
**(Against All Defendants)**

234. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

235. Two or more Defendants knowingly and willfully formed and participated in a conspiracy to accomplish the unlawful objectives set forth above. The conspiracy involved a coordinated, multi-phase scheme among the individual Defendants — Bin Ren, Xiujuan Li, Shao Tsu Liu, and Min Chun Lee — and the entity Defendants — Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar — each of which was formed or controlled by one or

more of the individual Defendants for the purpose of carrying out the conspiracy. The objectives of the conspiracy included: (a) the creation, organization, financing, and direction of the Competing Ningbo Entities as competing manufacturers of the AWS MARS MODULE, using Plaintiffs' trade secrets and proprietary information; (b) the systematic diversion of Plaintiffs' business, customer orders, shipments, payment streams, and commercial opportunities from Star Nova to entities owned or controlled by Defendants; (c) the usurpation of Plaintiffs' exclusive Amazon supplier-manufacturer certification by marketing and selling products manufactured by the Competing Ningbo Entities as if manufactured by Plaintiffs; (d) the concealment of Defendants' activities through manipulation of financial records, obstruction of audits, redirection of bank statements, and transition to non-Jiangsu Nova email domains; and (e) the misappropriation and destruction of Plaintiffs' confidential, proprietary, and trade secret information.

236. Within the conspiracy, each Defendant played a distinct and coordinated role.

237. Bin Ren, as President of Star Nova, served as the architect and primary executor of the scheme, exercising sole control over Star Nova's Amazon accounts, credentials, and communication channels, and using that control to redirect payments, cancel orders, and make false representations to Amazon.

238. Xiujuan Li, as Chief Financial Officer and Bin Ren's wife, managed the financial dimensions of the scheme, including forming Berrien Star Engineering and Berrien Star, controlling Star Nova's bank accounts, concealing the true ownership interests from Plaintiffs, receiving and processing Hai Zhao's travel receipts for his trips to the Competing Ningbo Entities, and conditioning access to financial records on agreements designed to shield evidence.

239. Shao Tsu Liu, as Star Nova's Vice President of Operations, directed the operational aspects of the diversion, including adding Hai Zhao to shared folders containing Plaintiffs' proprietary information, suspending shipments from Plaintiffs, proposing gag-order shareholder resolutions, obstructing the audit, and directing consignees to Northstar.

240. Min Chun Lee, as President and registered agent of Berrien Star and Shao Tsu Liu's wife, participated in the management and operation of Berrien Star as a conduit for diverted goods and payments. Corehire, formed by Xiujuan Li, served as an additional conduit for the importation of AWS MARS MODULE products.

241. In furtherance of the conspiracy, Defendants committed numerous overt acts, including but not limited to: (a) directing Hai Zhao and Liqing Rui to secretly perform work for the Competing Ningbo Entities, providing those entities with Plaintiffs' proprietary manufacturing processes, product specifications, and business information; (b) changing the consignees on Anhui Nova's export declarations from Star Nova to Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar to divert physical shipments; (c) requesting that Amazon redirect payments owed to Star Nova to bank accounts maintained by Berrien Star Engineering and falsely representing that Berrien Star Engineering was a subsidiary of Star Nova; (d) canceling and suspending Amazon orders for products manufactured by Jiangsu Nova and Anhui Nova while simultaneously importing competing products from the Competing Ningbo Entities; and (e) falsely alleging quality defects in Jiangsu Nova's products to deflect from the unauthorized product substitution.

242. The overt acts further included: (f) making false commitments during the August 17, 2026 meeting to conduct an audit, transition management, and resume orders, thereby inducing Plaintiffs to delay legal action while the diversion continued; (g) proposing shareholder resolutions

that would have prohibited all parties from reporting Defendants' misconduct to government agencies, Amazon, or other third parties; (h) conditioning access to Star Nova's financial records on the execution of agreements designed to render evidence of Defendants' misconduct inadmissible; (i) Hai Zhao's destruction of data on his office computer upon his resignation; and (j) continuing to import, market, and sell AWS MARS MODULE products manufactured by the Competing Ningbo Entities through the date of filing.

243. The conspiracy is ongoing. As of the date of filing, Defendants, including Corehire, continue to import AWS MARS MODULE products from the Competing Ningbo Entities, continue to sell those products to Amazon under Plaintiffs' supplier-manufacturer certification, and continue to accept and divert payments that rightfully belong to Plaintiffs.

244. As a direct and proximate result of the conspiracy, Plaintiffs have suffered damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against all Defendants, jointly and severally, for compensatory and punitive damages, disgorgement of all wrongfully obtained profits and benefits, injunctive relief, pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT XV
## ACCOUNTING
**(Against Defendants Bin Ren and Xiujuan Li, and Derivatively Against Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar)**

245. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

246. Jiangsu Nova, as the holder of a 58% membership interest in Star Nova, is entitled to a full and accurate accounting of Star Nova's assets, liabilities, income, expenses, distributions, and financial affairs. Star Nova, through Plaintiffs as its proper representatives, is likewise entitled

to an accounting of its own affairs, which have been managed and controlled exclusively by Defendants Bin Ren and Xiujuan Li.

247. Bin Ren and Xiujuan Li, who had exclusive possession, custody, and control of Star Nova's financial records, bank accounts, Amazon accounts, and corporate property, have repeatedly failed and refused to provide those records despite Plaintiffs' demands. Beginning on or about January 27, 2026, and continuing through May 28, 2026, Jiangsu Nova's CFO and Jiangsu Nova repeatedly requested that Bin Ren and Xiujuan Li provide Star Nova's 2025 general ledger, bank statements, and accounts receivable and accounts payable aging reports. Bin Ren failed and refused to comply. On or about July 29, 2026, an intermediary acting on behalf of Bin Ren communicated that Bin Ren would not provide Star Nova's financial data because possession of such data would be disadvantageous to him. Bin Ren and Xiujuan Li further conditioned access to Star Nova's financial records on Plaintiffs' execution of agreements designed to render evidence of Defendants' misconduct inadmissible in litigation.

248. The financial relationship among the parties is sufficiently complex that a full accounting is necessary and Plaintiffs lack an adequate remedy at law. Among other things, Defendants caused Star Nova's bank account records to misrepresent ownership interests, redirected Amazon payments to Berrien Star Engineering, diverted consignments to Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, and other entities controlled by or affiliated with Defendants, and commingled or concealed the disposition of funds flowing through multiple entities controlled by Defendants. The full extent of the diversion and misappropriation cannot be determined without a court-ordered accounting.

249. Plaintiffs are further entitled to an accounting of the assets, funds, payments, and property received by or flowing through Berrien Star Engineering, Corehire, Berrien Star, Precise

Installer, and Northstar, each of which was formed or controlled by Bin Ren, Xiujuan Li, Shao Tsu Liu, and/or Min Chun Lee and served as a recipient of diverted consignments, payments, and revenues that rightfully belonged to Plaintiffs.

250. Plaintiffs are entitled to a complete accounting and to recover all sums shown to be due upon such accounting.

**WHEREFORE,** Plaintiffs respectfully request that the Court order Defendants Bin Ren and Xiujuan Li to render a full accounting of Star Nova's financial affairs, including all assets, funds, payments, and property received by or flowing through Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar; order Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar to produce all financial records related to their receipt and disposition of assets diverted from Plaintiffs; award all sums found due upon the accounting; together with pre-judgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

**COUNT XVI**
**FRAUDULENT TRANSFER**
**(Indiana Uniform Fraudulent Transfer Act, Ind. Code § 32-18-2)**
**(Against All Defendants)**

251. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

252. Plaintiffs are creditors of Star Nova and Defendants within the meaning of the Indiana Uniform Fraudulent Transfer Act, Ind. Code § 32-18-2-2. As of September 29, 2026, Star Nova owed Jiangsu Nova and its affiliated entities (including Anhui Nova) $17,691,934.09 and RMB 5,424,701.28 for goods manufactured, sold, and/or delivered, but not paid for. Plaintiffs further hold a claim against Star Nova of $1,392,702.52 for goods manufactured for Star Nova but not accepted for shipment.

253. Defendants caused Star Nova to transfer assets, including payments received from Amazon, revenues, goods, and other property, to Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, and other entities owned or controlled by Defendants. The transfers included, among others: (a) on or about July 30, 2023, and again on or about May 28, 2026, the redirection of Amazon payments owed to Star Nova to bank accounts maintained by Berrien Star Engineering; (b) beginning on or about October 10, 2025, and continuing through January 6, 2026, the diversion of consignments of AWS MARS MODULE products to Berrien Star Engineering; (c) beginning on or about January 7, 2026, and continuing through February 13, 2026, the diversion of consignments to Berrien Star; (d) beginning on or about March 11, 2026, and continuing through May 29, 2026, the diversion of consignments to Precise Installer; and (e) on or about September 14, 2026, the diversion of consignments to Northstar. In addition, U.S. customs records reflect that Corehire imported AWS MARS MODULE products manufactured by Jiangsu Nova without Plaintiffs' knowledge, authorization, or consent.

254. The foregoing transfers are continuing. As of the date of filing, U.S. customs import data confirms that Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar continued to import AWS MARS MODULE products from the Competing Ningbo Entities, and Defendants continued to accept and retain payments from Amazon that rightfully belong to Plaintiffs. Upon information and belief, Defendants continue to transfer Star Nova's assets to entities they own or control.

255. Such transfers were made with the actual intent to hinder, delay, or defraud Plaintiffs as creditors of Star Nova, as evidenced by, among other things: (a) the transfers were made to insiders; (b) Defendants retained control of the transferred assets after the transfers; (c) the transfers were concealed from Plaintiffs; (d) at the time of the transfers, Star Nova had been

threatened with suit and had outstanding obligations to Plaintiffs; (e) the transfers were of substantially all of Star Nova's assets; and (f) the value of the consideration received by Star Nova for the transfers was not reasonably equivalent to the value of the assets transferred. Ind. Code § 32-18-2-14(b).

256. Alternatively, the transfers were made without Star Nova receiving reasonably equivalent value in exchange, and Star Nova was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or Star Nova intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. Ind. Code § 32-18-2-15(a).

257. As a direct and proximate result, Plaintiffs have suffered damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment avoiding the fraudulent transfers; granting attachment or other provisional remedies against the transferred assets; enjoining further transfers; appointing a receiver; granting any other relief permitted under Ind. Code § 32-18-2-17; awarding compensatory damages, pre-judgment and post-judgment interest, costs of suit, and such other relief as the Court deems just and proper.

**COUNT XVII**
**VOIDABLE TRANSACTIONS**
**(Washington Uniform Voidable Transactions Act, Wash. Rev. Code § 19.40.041)**
**(Against All Defendants)**

258. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

259. Plaintiffs plead this claim in the alternative to Plaintiffs' claim under the Indiana Uniform Fraudulent Transfer Act.

260. Section 10.2 of the Operating Agreement provides that the rights and obligations of the parties thereunder are governed by Washington law. Bin Ren and Xiujuan Li, as parties to the Operating Agreement, are subject to Washington law under that provision. Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, Shao Tsu Liu, and Min Chun Lee are not parties to the Operating Agreement but are subject to the Washington Uniform Voidable Transactions Act as transferees or recipients of assets diverted from Star Nova, a Washington-law-governed entity. Accordingly, the Washington Uniform Voidable Transactions Act provides an alternative basis for relief against all Defendants.

261. Plaintiffs are creditors of Star Nova and Defendants within the meaning of the Washington Uniform Voidable Transactions Act, Wash. Rev. Code § 19.40.011. As of September 29, 2026, Star Nova owed Jiangsu Nova and its affiliated entities (including Anhui Nova) $17,691,934.09 and RMB 5,424,701.28 for goods manufactured, sold, and/or delivered, but not paid for. Plaintiffs further hold a claim against Star Nova of $1,392,702.52 for goods manufactured for Star Nova but not accepted for shipment.

262. Defendants caused Star Nova to transfer assets, including payments received from Amazon, revenues, goods, and other property, to Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, and other entities owned or controlled by Defendants. The transfers included, among others: (a) on or about July 30, 2023, and again on or about May 28, 2026, the redirection of Amazon payments owed to Star Nova to bank accounts maintained by Berrien Star Engineering; (b) beginning on or about October 10, 2025, and continuing through January 6, 2026, the diversion of consignments of AWS MARS MODULE products to Berrien Star Engineering; (c) beginning on or about January 7, 2026, and continuing through February 13, 2026, the diversion of consignments to Berrien Star; (d) beginning on or about March 11, 2026, and continuing through

May 29, 2026, the diversion of consignments to Precise Installer; and (e) on or about September 14, 2026, the diversion of consignments to Northstar. In addition, U.S. customs records reflect that Corehire imported AWS MARS MODULE products manufactured by Jiangsu Nova without Plaintiffs' knowledge, authorization, or consent.

263. The foregoing transfers are continuing. As of the date of filing, U.S. customs import data confirms that Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, and Northstar continued to import AWS MARS MODULE products from the Competing Ningbo Entities, and Defendants continued to accept and retain payments from Amazon that rightfully belong to Plaintiffs. Upon information and belief, Defendants continue to transfer Star Nova's assets to entities they own or control.

264. Such transfers were made with the actual intent to hinder, delay, or defraud Plaintiffs as creditors, as evidenced by, among other things, the badges of fraud identified in Wash. Rev. Code § 19.40.041(b), including transfers to insiders, concealment, retention of control, and the absence of reasonably equivalent value.

265. Alternatively, the transfers were made without Star Nova receiving reasonably equivalent value in exchange, and Star Nova was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small, or Star Nova intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. Wash. Rev. Code § 19.40.051.

266. As a direct and proximate result, Plaintiffs have suffered damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment avoiding the voidable transactions; granting attachment or other provisional remedies; enjoining further

transfers; appointing a receiver; granting any other relief permitted under Wash. Rev. Code § 19.40.071; awarding compensatory damages, pre-judgment and post-judgment interest, costs of suit, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Jiangsu Nova, Star Nova, and Anhui Nova respectfully pray that this Court enter judgment in their favor and against Defendants, and grant the following relief:

A. Compensatory damages against Defendants, jointly and severally, in an amount to be proven at trial, including but not limited to the outstanding balance of $17,691,934.09 and RMB 5,424,701.28 for goods manufactured, sold, and/or delivered, and $1,392,702.52 for goods manufactured for Star Nova but not accepted for shipment;

B. Punitive and exemplary damages against Defendants in an amount sufficient to punish and deter their willful, malicious, and fraudulent conduct;

C. Statutory exemplary damages, treble damages, and a reasonable royalty as permitted under the Defend Trade Secrets Act, the Washington Uniform Trade Secrets Act, and the Indiana Uniform Trade Secrets Act, including Ind. Code § 24-2-3-4;

D. Defendants' profits from the sale of goods bearing false designations of origin and treble damages as permitted under the Lanham Act, 15 U.S.C. § 1117;

E. Disgorgement of all profits, revenues, and benefits wrongfully obtained by Defendants through the conduct alleged herein, and restitution of all amounts by which Defendants have been unjustly enriched;

F. The imposition of a constructive trust over all funds, property, payments, and business opportunities wrongfully diverted from Plaintiffs, including funds and accounts held by or through Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, and other entities controlled by or affiliated with Defendants;

G. A full and complete accounting of Star Nova's assets, liabilities, income, expenses, distributions, and financial affairs, including all assets, funds, payments, and property received by or flowing through Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, and other entities controlled by or affiliated with Defendants, and payment of all sums found due upon such accounting;

H. Avoidance and recovery of all fraudulent transfers made by or at the direction of Defendants, including transfers to Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, and other entities controlled by Defendants, and an injunction against further disposition of Star Nova's assets;

I. Avoidance and recovery of voidable transactions under the Washington Uniform Voidable Transactions Act, Wash. Rev. Code § 19.40.071, including transactions involving Berrien Star Engineering, Corehire, Berrien Star, Precise Installer, Northstar, and other entities controlled by Defendants;

J. Preliminary and permanent injunctive relief enjoining Defendants, including Corehire, from further diverting Plaintiffs' business, shipments, payments, and opportunities; from using or disclosing Plaintiffs' confidential, proprietary, and trade secret information; and from misrepresenting the affiliation of Berrien Star

Engineering or the source of AWS MARS MODULE products, and requiring Defendants to transfer control of Star Nova and its records, accounts, and property to Plaintiffs' designated representatives;

K. Reasonable attorneys' fees and costs of suit as permitted by the Operating Agreement (Section 10.4), the Defend Trade Secrets Act, the Washington Uniform Trade Secrets Act, the Indiana Uniform Trade Secrets Act (Ind. Code § 24-2-3-5), and the Lanham Act (15 U.S.C. § 1117);

L. Pre-judgment and post-judgment interest at the maximum rates allowed by law; and

M. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

FBT GIBBONS LLP

By: *<u>/s/ Katherine M. Slisz</u>*

Jonathan A. Bont, #28476-49
Matthew J. Clark, #31263-49
Katherine M. Slisz, #36317-49
111 Monument Circle, Suite 4500
P.O. Box 44961
Indianapolis, IN 46244-0961
Telephone: (317) 237-3800
Facsimile: (317) 237-3900
jbont@fbtgibbons.com
mclark@fbtgibbons.com
kslisz@fbtgibbons.com

*Attorneys for Plaintiffs Jiangsu Nova Intelligent Logistics Equipment Co., Ltd., Anhui Nova Intelligent Equipment Co., Ltd., Star Nova US LLC.*